```
 1
 2
 3
 4
 5
 6
 7
 8                     UNITED STATES DISTRICT COURT
 9                    CENTRAL DISTRICT OF CALIFORNIA
10
11  MARK W. SCHOENING,              )  NO. CV 10-03330 SS
                                    )
12            Plaintiff,            )
                                    )
13       v.                         )  MEMORANDUM DECISION AND ORDER
                                    )
14  MICHAEL J. ASTRUE,              )
    Commissioner of the Social      )
15  Security Administration,        )
                                    )
16            Defendant.            )
                                    )
17
18                                  I.
19                             INTRODUCTION
20
```

Plaintiff Mark W. Schoening ("Plaintiff") brings this action seeking to reverse the decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying his application for Disability Insurance Benefits ("DIB"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Agency is REVERSED and REMANDED for further proceedings.

## II.

## PROCEDURAL HISTORY

On September 1, 2004, Plaintiff filed an application for Disability Insurance Benefits ("DIB") claiming that he became disabled on June 1, 2002. (Administrative Record ("AR") 162-65). Plaintiff was denied benefits by initial determination on December 22, 2004. (AR 44-49). On February 1, 2005, Plaintiff requested a hearing before an ALJ. (AR 52). The hearing took place on October 21, 2005. (AR 698-711). Plaintiff appeared with counsel and testified. (AR 698). On November 18, 2005, Administrative Law Judge ("ALJ") Jan Donshbach denied benefits. (AR 36-43). At the request of the Plaintiff, the Appeals Council reviewed the unfavorable decision of the ALJ. (AR 62-64). The Appeals Council vacated the November 18, 2005 decision and remanded the claim. (AR 62).

The second hearing took place in Long Beach, California on April 10, 2007 with ALJ Edward C. Graham presiding. (AR 680-697). Plaintiff appeared with counsel and testified. (AR 680). On April 20, 2007, the ALJ issued a decision denying Plaintiff benefits. (AR 712-22). The Plaintiff requested the Appeals Council review the ALJ decision, and upon review, the Appeals Council again remanded Plaintiff's claim for a third hearing. (AR 79-83, 85-87).

On August 4, 2009, the third hearing again took place in Long Beach, California with ALJ Edward C. Graham presiding. (AR 664-79). Plaintiff appeared with counsel and testified. (AR 664). The ALJ

issued an unfavorable decision on October 14, 2009. (AR 13-29). Plaintiff requested review by the Appeals Council which was denied on March 4, 2010. (AR 9-12, 6-8). On May 6, 2010, Plaintiff filed the instant action.

## III.
## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. § 416.910.

3

| | | |
|---|---|---|
| (2) | Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three. |
| (3) | Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four. |
| (4) | Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five. |
| (5) | Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled. |

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. If, at step four, the claimant meets his burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[2] age, education and work experience. Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or

---

[2] Residual functional capacity is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a).

4

by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

**IV.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the

court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

**V.**

**DISCUSSION**

**The ALJ Failed to Provide Specific and Legitimate Reasons To Reject The Treating Physician's Opinion**

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons to reject the opinion of his treating physician, Dr. Sandler. (Memorandum in Support of Complaint ("Complaint Memo.") at 6, 17). Specifically, Plaintiff argues that the ALJ failed to properly consider Dr. Sandler's findings regarding Plaintiff's ability to tolerate non-concentrated forms of pulmonary irritants, Plaintiff's ability to stand and walk in a day, Plaintiff's ability to use his hands for manipulation, and Plaintiff's mental health. (Id. at 9-13). This Court agrees.

Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific, legitimate reasons, supported by substantial evidence in the record. Id. (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (citing Reddick, 157 F.3d at 725). The opinions of treating physicians are entitled to special

weight because the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

The opinion at issue here is that of Dr. Joel M. Sandler, who the ALJ recognized as Plaintiff's treating physician. (AR 23). Dr. Sandler began treating Plaintiff in February of 2005. (AR 488). The record demonstrates that Dr. Sandler treated Plaintiff from March of 2007 to July of 2009. (AR 485-94, 598-02, 604-11, 620-49)[3]. On January 6, 2009, Dr. Sandler completed a residual functional capacity questionnaire, (AR 486-87), and a mental work restriction questionnaire. (AR 488-494).

The ALJ rejected Dr. Sandler's January 2009 assessment, "even though he []is the treating physician," because the ALJ concluded that Dr. Sandler's opinion was "brief, conclusory and inadequately supported by the clinical findings." (AR 19). The ALJ explained that he gives "greater weight to the signs, test results, and medical findings noted in the longitudinal medical records" than to an "unsupported assessment . . . completed for the sole purpose of qualifying [Plaintiff] for benefits." (AR 19-20). However, the ALJ's rejection of Dr. Sandler's medical opinion as conclusory and unsupported by clinical findings is contradicted by the record. Indeed, the record contains ample office visit reports and treatment notes which support and explain Dr. Sandler's findings. (AR 598-02, 604-11, 620-49). For example, Dr.

---

[3] Plaintiff has been a patient of Dr. Sandler since March of 2007. (AR 642). Dr. Sandler documented Plaintiff's office visits on the following dates: 3/5/2007, 11/5/2008, 12/8/2008, 12/17/2008, 1/5/2009, 2/5/2009, 3/19/2011, 4/2/2009, 4/22/2009, 5/21/2009, 5/21/2009, and 7/2/2009. (AR 485-89, 598-02, 604-11, 620-49).

7

Sandler examined Plaintiff's respiration during physical exams(See AR 598, 601), tested Plaintiff for tender points during musculoskeletal physical exams (AR 599, 606), and prescribed Plaintiff medicine for attention deficit disorder (AR 488, 606, 611, 632). Thus, the Court concludes that the ALJ's rejection of Dr. Sandler's findings as conclusory and unsupported by clinical findings is not legitimate.

**1. The ALJ Erred In Rejecting Dr. Sandler's Respiratory Limitations**

With respect to Plaintiff's respiratory limitations, Dr. Sandler found that Plaintiff could not tolerate any exposure to dust, fumes, and gases. (AR 487). In his treatment notes, Dr. Sandler noted that Plaintiff "has a daily nonproductive cough[,] . . . occasional tightness in his chest[,] . . . [he] wheezes at night[,] and uses an albuterol inhaler." (AR 642). In addition, Dr. Sandler noted that "[Plaintiff] currently can walk one block without dyspnea and has to stop." (Id.). Based on these findings, Dr. Sandler diagnosed Plaintiff with chronic obstructive pulmonary disease [COPD] with an asthmatic component. (AR 598, 622, 642). Dr. Sandler noted in July 2009 that COPD continued to be an active problem for Plaintiff. (AR 598).

The ALJ rejected Dr. Sandler's findings regarding Plaintiff's respiratory limitations because he opined that Dr. Sandler's findings were not supported "by the information in the treatment notes". (AR 20). After rejecting the findings of Dr. Sandler, the ALJ relied on the findings of a consulting physician, Dr. Taylor, to determine Plaintiff's respiratory limitations. (Id.). The ALJ noted that Dr. Taylor found

"a history of COPD [chronic obstructive pulmonary disease], but normal chest and lung excursions without wheezing, rhonchi or rubs." (Id.). Dr. Taylor recommended that Plaintiff be "only occasionally . . . exposed to any fumes, dust, pollutions [sic], extremes in temperature, gasses, and chemicals based on pulmonary problems." (AR 560). The ALJ therefore concluded that Plaintiff needs to avoid only "concentrated exposure to pulmonary irritants." (AR 19).

The Court finds that the ALJ's rejection of Dr. Sandler's respiratory limitations because they are allegedly not supported by the doctor's treatment notes is not a legitimate reason. To the extent the ALJ rejected Dr. Sandler's findings as brief and conclusory, the record contradicts this finding as set forth above. After examining Plaintiff's lungs during office visits, Dr. Sandler diagnosed Plaintiff with COPD. (AR 598, 601). While Plaintiff's lungs were clear on some office visits, Dr. Sandler noted in July 2009 that COPD continued to be an active problem for Plaintiff. (AR 598). Additionally, Dr. Sandler's findings are corroborated by the findings of Dr. Sedgh, who conducted an internal medicine consultation and found that Plaintiff suffered from "[a]sthma" and "expiratory weezing." (AR 432). Dr. Sedgh concluded in his functional assessment that Plaintiff "should avoid exposure to dust and fumes secondary to asthma." (Id.). Thus, to the extent that the ALJ rejected Dr. Sandler's opinion with respect to Plaintiff's respiratory condition as conclusory and unsupported by Dr. Sandler's treatment notes, these reasons are not supported by the record.
//
//
//

**2. The ALJ Erred In Rejecting Dr. Sandler's Diagnosis of Fibromyalgia and Plaintiff's Physical Limitations**

With respect to Plaintiff's physical condition, Dr. Sandler diagnosed Plaintiff with fibromyalgia. (AR 599, 596). Dr. Sandler made this assessment after he found "[m]ultiple tender points in [the] muscles of [Plaintiff's] trunk [and] upper and lower extremities [which meet] the criteria for fibromyalgia." (AR 599). In his treatment notes, Dr. Sander stated that "[plaintiff] has tenderness over the paralumbar area and over the lumbar vertebrae at about L1, 2, and 3." (AR 606). Dr. Sandler also diagnosed Plaintiff with Rheumatoid Arthritis and Chronic Pain Syndrome. (AR 598, 604, 606). In light of these findings, Dr. Sandler limited the amount of weight that Plaintiff may lift and carry, as well as his ability to sit, stand, or walk for extended periods of time. (AR 486). Dr. Sandler limited the use of Plaintiff's hands for simple grasping, pushing & pulling, and fine manipulation. (AR 486). Dr. Sandler also prescribed Plaintiff pain medications such as Lortab and Neurontin. (AR 598).

The ALJ rejected Dr. Sandler's diagnosis of fibromyalgia because "the medical records do not show . . . objective corroborative findings or show that the claimant has ongoing treatment for fibromyalgia." (AR 21). In forming his opinion, the ALJ relied on the report of Dr. Taylor who found "no evidence of deformities, swelling or tenderness to direct palpation of any joint." (AR 21, 558). The ALJ stated that Plaintiff only had "subjective pain complaints and [reported] that he sometimes says he has subjective tenderness." (AR 21). The ALJ further stated that fibromyalgia, "if it is severe, should result in objective

10

functional restrictions . . . [but] the medical records do not show any severe functional limitations secondary to pain." (Id.). The ALJ therefore concluded that Plaintiff "demonstrates no functional limitations of the hands or fingers." (Id.).

The ALJ failed to provide legitimate reasons to reject Dr. Sandler's diagnosis of fibromyalgia. The Ninth Circuit has recognized that objective findings "do not establish the presence or absence of fibromyalgia." Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 872 (9th Cir. 2004), overruled in part on other grounds, Abatie v Alta Health & Life Ins. Co., 458 F.3d 955, 969 (9th Cir. 2006). As stated in Jordan:

> [F]ibromyalgia's cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia.

370 F.3d at 872; accord Salomaa v. Honda Long Term Disability Plan, __ F.3d __, 2011 WL 2040934 at *10 (9th Cir. May 26, 2011). Instead, a fibromyalgia diagnosis can only be confirmed by a specific test where a patient reports pain in five parts of the body and when at least eleven of eighteen points cause pain when palpated by an examiner's thumb. (Id.). Here, the ALJ erroneously rejected Dr. Sandler's fibromyalgia diagnosis based on the lack of objective findings. Moreover, Dr. Sandler found "multiple tender points in [the] muscles of [Plaintiff's] trunk [and] upper and lower extremities [which meet] the criteria for fibromyalgia." (AR 599). Dr. Sandler also prescribed

11

Plaintiff pain medicines Lortab and Neurontin which are common treatments for fibromyalgia. (AR 598). On remand, the ALJ must either provide specific and legitimate reasons to reject the evidence of Plaintiff's fibromyalgia or analyze its affect on Plaintiff's ability to work.

### 3. **The ALJ Erred In Rejecting Dr. Sandler's Opinion Regarding Plaintiff's Mental Capacity**

With respect to Plaintiff's mental health, Dr. Sandler diagnosed Plaintiff with attention deficit disorder, and noted that he becomes easily upset and has difficulty focusing and ordering his thoughts. (AR 488-499). Plaintiff's medical records indicate a long history of mental health treatment with a variety of different physicians.[4] Specifically, at issue in the present case is Dr. Sandler's mental work restriction questionnaire which he completed on January 6, 2009. (AR 488-94). In assessing the affect of Plaintiff's mental condition on his ability to perform work, Dr. Sandler found that Plaintiff has a severe impairment in his ability to complete a normal work day without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number of and length of rest periods. (AR 489). In addition, Dr. Sandler noted that Plaintiff has a marked impairment in his ability to: maintain attention for two hour segments, to work in coordination with or in close proximity to other people without being

---

[4] Plaintiff has been diagnosed with ADD (AR 255-56), Affective (Mood) Disorder (AR 663), Depressive Disorder (AR 402), and Borderline Intellectual Functioning (AR 402). Consultative physician Dr. Izzi diagnosed Plaintiff with depressive disorder, polysubstance abuse, and borderline intellectual functioning. (AR 551). (See also AR 239-40, 259, 400-02, 420-26, 582-592, 663, 670).

12

distracted by them, to make simple work-related decisions, and to get along with co-workers or peers without distracting them or exhibiting behavior extremes. (AR 488-89). Dr. Sandler prescribed Plaintiff with a number of medications designed to treat his mental condition including Ritalin, Desipramine, and Diazepam. (AR 598, 632).

The ALJ rejected Dr. Sandler's mental work restrictions because Dr. Sandler is not a mental health specialist and because he was not treating the Plaintiff for mental health problems. (AR 23-24). The ALJ therefore declined to "endorse Dr. Sandler's assessment and [gave] no weight to any of the functional limitations alleged on his disability form." (AR 24). The ALJ specifically emphasized that "NO intellectual testing was done [and that] [n]o psychiatric evaluation was performed." (AR 23) (emphasis in original). As a result, the ALJ relied instead on the less restrictive mental limitations reported by consultative physician, Dr. Izzi (AR 23-24, 551).

The ALJ did not give legitimate reasons based on the record for rejecting Dr. Sandler's assessment of Plaintiff's mental condition. Although the ALJ emphasized that no intellectual testing or psychiatric evaluations were performed, Dr. Sandler noted in an office visit report on January 5, 2009 that the Plaintiff has "ADD which has been documented with a TOVA test[5], which was authorized on March 8, 2007, and done with Dr. Middleton." (AR 23, 488, 606). Dr. Sandler also noted on March 5, 2007 that Plaintiff was diagnosed with "ADHD which had been validated

---

[5] "The T.O.V.A. [Test of Variables of Attention] is an objective, neurophysiological measure of attention, not a subjective rating of behavior." THE TOVA COMPANY, http://www.tovatest.com (last visited June 15, 2011).

13

by a psychologist in the past." (AR 611). Although Dr. Sandler is not a mental health specialist, as noted earlier, he treated the Plaintiff for mental health conditions by prescribing him psychiatric drugs in addition to treating the Plaintiff for other health conditions. (AR 598, 622, 632). Plaintiff's extensive mental health records corroborate Dr. Sandler's medical assessment. (See supra n.4). The ALJ's rejection of Dr. Sandler's mental health restrictions because he is not a mental health care specialist is not a proper rationale in light of the extensive record of mental health treatment and tests from a variety of treating doctors, including psychologists. Although ordinarily a lack of expertise in the mental health field may be a legitimate reason to discount a doctor's opinion on mental limitations, here it was not a legitimate reason. Although Dr. Sandler is not a mental health specialist, given the quantity and quality of evidence contained in the records regarding the mental health treatment he provided Plaintiff, the ALJ should have given some weight to the mental limitation findings of Dr. Sandler. The ALJ must either provide specific and legitimate reasons to reject Dr. Sandler's opinion or incorporate the mental health limitations provided by Dr. Sandler into the RFC determination.

Remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). Because the ALJ failed to provide specific and legitimate reasons for rejecting the treating physician's opinion, or, instead, to fully credit the opinion, the case must be remanded to remedy this defect. Upon remand, the ALJ must either provide specific and legitimate reasons to reject Dr. Sandler's opinion

14

or incorporate the limitations provided by Dr. Sandler into the RFC determination.

## VII.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: June 21, 2011

_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE